## IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

TD BANK USA N.A.                  )
as successor in interest to       )
Target National Bank,             )
                                  )
        Plaintiff,                )
                                  )        Case No. CPU4-19-001622
        v.                        )
                                  )
AMANDA F. SMALE,                  )
                                  )
        Defendant.                )

Submitted: July 17, 2023
Decided: October 12, 2023

Seth Yeager, Esq.                      Amanda Smale
15 Ashley Place, Suite 2B              1510 Forsythia Ave.
Wilmington, DE 19804                   Wilmington, DE 19810
*Attorney for Plaintiff*               *Self-represented Defendant*

## FINAL DECISION AND ORDER

Plaintiff TD BANK USA N.A., as successor in interest to Target National Bank ("TD Bank") initiated this litigation against Defendant Amanda Smale to recover a debt incurred on a credit card account. A bench trial was held on June 16, 2023, at the conclusion of which the Court reserved decision and afforded the parties

1

opportunity to supplement the record with documentation as to account ownership.[1] For the reasons set forth below, the Court finds in favor of Ms. Smale.

## FACTS

On April 24, 2019, TD Bank filed a Complaint against Ms. Smale alleging that Ms. Smale entered a credit card agreement with Target National Bank (the "Agreement"), the rights to which were subsequently assigned to TD Bank. TD Bank further alleged that Ms. Smale breached that agreement by failing to make payments and, as a result, TD Bank suffered damages in the amount of $2,965.11.[2] On April 21, 2023, Ms. Smale filed an Answer in which she denied the substantive allegations set forth in the Complaint; however, she did not assert any affirmative defenses.

The case proceeded to trial on June 16, 2023. At trial, the Court heard testimony from two witnesses: Donald Warner testified during TD Bank's case-in chief, and Ms. Smale testified for the defense. The Court also received documents into evidence.[3]

---

[1]  At trial, this matter was condensed and heard with two other consumer debt cases involving Ms. Smale, both of which were subsequently dismissed at the request of the plaintiffs.

[2]  Ms. Smale failed to respond to the Complaint and, on October 16, 2020, default judgment was entered in favor of TD Bank pursuant to *CCP Civ. R.* 55(b)(1). However, Ms. Smale subsequently filed a motion to vacate the judgment, which was granted on April 21, 2023.

[3]  Plaintiff's Exhibit 1 was admitted into evidence.

Mr. Warner, an employee of Target Enterprises Incorporated for 16 years,[4] testified regarding the Target credit card account initiated by the Agreement (the "Account" or "Target Card"). Although TD Bank's claims against Ms. Smale are derived solely from the Agreement, Mr. Warner did not review—and TD Bank did not introduce into evidence—the Agreement itself.[5] In fact, Mr. Warner could not confirm whether the Agreement was available at all, given the company's seven-year retention policy. Instead, his knowledge was based upon his review of business records, including electronically stored information, which he is tasked with researching as part of his job duties.[6]

According to Mr. Warner, Ms. Smale opened the Target Account on December 21, 2009, by applying for credit in-person at a store. A few years after the Account was opened, on March 13, 2013, all of Target's credit card accounts, including the Account held by Ms. Smale, were acquired by TD Bank. Mr. Warner testified that the Account remained open until Ms. Smale defaulted on the Agreement in 2018 by failing to make payments; the last payment on the Account

---

[4] Mr. Warner explained that his employer, Target Enterprises Incorporated, is the authorized servicer of the Target credit card owned by TD Bank.

[5] TD Bank alleged only that an agreement existed with Ms. Smale—it did not assert any other account-type theories of recovery.

[6] Mr. Warner did not provide his specific job title. Rather, he described his job duties as "researching business records, including electronically stored information relating to credit card accounts in connection with collections and collection-related litigation."

3

was made on July 20, 2018. Consequently, on February 20, 2019, the account was charged off with a balance due of $2,965.11.

Further questioning revealed that the information upon which Mr. Warner's testimony was based was considerably lacking in contextual detail. While records indicated that the Account was opened in-person at a Target store, Mr. Warner could not provide any insight into the location of the store or the time at which the application was submitted. Similarly, he postulated that since the Account was opened in a store, the applicant would be required to show proof of identity. However, he did not indicate whether proof of identity was a requirement dictated by Target policy, nor did he point to any information to demonstrate that such practice was employed in Ms. Smale's case, i.e., what, if any, proof identification was provided to open her Account.

Ms. Smale testified during her own case-in-chief. She was adamant that she had no recollection of opening the Account, and cast suspicion on her ex-husband, who she separated from in July of 2018.[7] According to Ms. Smale, her former husband had a history of opening credit accounts in her name without her knowledge.[8] To that end, she took issue with the lack of evidence regarding the

---

[7] Ms. Smale testified that the divorce was finalized in February of 2020.
[8] Mr. Warner noted two recorded communications from Ms. Smale with the fraud department; one from April 21, 2023, which was closed, and the second from June 10, 2023, which was denied. However, he could not provide any details regarding the basis for the dispositions as he did not consult with the fraud team on the matter.

4

circumstances under which the Account was opened, particularly the lack of information as to the location in which it was opened. She also questioned the integrity of the Account statements introduced at trial which, she argued, appeared incomplete, and she noted that there was no indication that the statements were sent to her home, rather than electronically to a third-party.

Even though Ms. Smale impugned TD Bank's scant records, expressed doubt at the proposition that she had personally applied for the Account, and indicated that she had no memory of ever obtaining a Target credit card, she candidly acknowledged the possibility that her recollection was incomplete. She explained that, given the significant passage of time since it was opened and the many responsibilities she would have been juggling, she could not swear under oath that she never held a credit account with Target.

## DISCUSSION

To recover for breach of contract, the plaintiff must prove, by a preponderance of the evidence, that: (1) a contract existed between the parties; (2) the defendant breached an obligation imposed under the contract; and (3) damages to plaintiff resulting from that breach.[9] Critical to the Court's analysis is the applicable burden of proof—that is, proof by a preponderance of the evidence. "Proof by a

---

[9]    *VLIW Techn., LLC v. Hewlett Packard Co.,* 840 A.2d 606, 612 (Del. 2012); *Interim Healthcare, Inc. v. Spherion Corp.,* 884 A.2d 513, 548 (Del. Super. 2005).

preponderance of the evidence means proof that something is more likely than not."[10] The Court, as finder of fact, must weigh the credibility of witnesses and "find in favor of the party upon whose side the greater weight of the evidence is found."[11]

Here, the sole matter of contention is whether TD Bank proved, by a preponderance of the evidence, that an agreement existed between Target and Ms. Smale. Based on the testimony presented at trial, it is clear that, more likely than not, the Account was opened in Ms. Smale's name. What is less clear is whether Ms. Smale herself was a party to the Agreement which precipitated the Account.

At trial, Ms. Smale testified that she had no recollection of opening the Account. Indeed, Ms. Smale readily conceded the potential for imprecisions in her memory given the significant lapse of time. However, her candor on that issue lent credibility to her testimony, and TD Bank did not introduce any evidence to demonstrate that her recollection (i.e., that she did not open the Account) was incorrect.

Moreover, Ms. Smale asserted that she believed her ex-husband opened the Account without her knowledge—a proposition augmented by the evidence

---

[10] *Del. Express Shuttle, Inc.*, 2002 WL 31458243, at \*17 (quoting Del.Super. P.J.I. Civ. § 4.1 (2000)).

[11] *D.W. Burt Concrete Construction, Inc. v. Dewey Beach Enterprises, Inc.*, 2016 WL 639653, \*2 (Del. Super. Feb. 17, 2016)(citing *Patel v. Patel*, 2009 WL 427977, \*3 (Del.Super. Feb. 20, 2009)).

presented at trial, including Ms. Smale's unrefuted testimony. Ms. Smale described the demise of her relationship with her ex-husband, including his history of opening lines of credit in her name without her knowledge. That, coupled with the fact that the Smales' separation in July of 2018 coincided with the cessation of payments on the Account, lends credibility to her proposition. Yet TD Bank did not introduce any evidence to establish that it was Ms. Smale herself—not her husband—who opened the Account. TD Bank could have produced the Agreement to show that Ms. Smale signed the Agreement. It did not.[12] TD Bank could have introduced evidence to show that Target had a policy regarding proof of identity requirements for in-store credit applications, and that such policy would have been applied when the Account was opened. It did not.

Further, TD Bank did not demonstrate that Ms. Smale personally used or assented to the Account; it did not produce any evidence as to the date, location, or subject of purchases made with the Target Card. Similarly, TD Bank did not demonstrate that Ms. Smale knew or should have know of the existence of the Account; it did not establish that account statements were sent via mail to Ms. Smale's address, rather than electronically.

---

[12] In fact, the sole witness to testify on behalf of TD Bank, Mr. Warner, did not review the Agreement himself.

Weighing the evidence presented at trial, TD Bank did not demonstrate that, more likely than not, Ms. Smale personally entered the Agreement with Target. Since TD Bank failed to establish that an agreement existed between Target and Ms. Smale, the Court must find in favor of Ms. Smale.

## CONCLUSION

For the foregoing reasons, judgment is entered in favor of Defendant Amanda Smale. Each party shall bear their own costs.

**IT IS SO ORDERED.**

The Honorable Carl C. Danberg,
Chief Judge